STUART E. FAGAN, State Bar No. 152732
P.O. Box 503741
San Diego, California 92150-3741
Telephone: (858) 220-9601
Facsimile: (858) 676-5339
Email: fairhousinglawyer@sbcglobal.net

Plaintiff In Pro Per

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STUART FAGAN,<br><br>    Plaintiff,<br><br>    v.<br><br>REEBOK INTERNATIONAL, LTD., a Massachusetts corporation, J.C. PENNEY CORPORATION, INC., a Delaware Corporation,<br><br>    Defendants. | No. 3:12-CV-02142-BTM-KSC<br><br>FIRST AMENDED COMPLAINT FOR MONETARY RELIEF; DEMAND FOR TRIAL BY JURY |

**I.**

**INTRODUCTION**

1.  This action seeks monetary relief against defendant Reebok International, Ltd., a Massachusetts corporation, for personal injuries sustained by plaintiff Stuart Fagan.

## II.
## JURISDICTION AND VENUE

2. Jurisdiction is conferred upon this Court pursuant to 28 U.S.C. §1332(a)(1) in that the matter in controversy exceeds the sum of $75,000, exclusive of interest and costs, and is between citizens of different states. This Court has supplemental jurisdiction pursuant to 28 U.S.C. §1367 to hear and determine plaintiff's state law claims because those claims are related to plaintiff's federal law claims and arise out of a common nucleus of related facts. Plaintiff's state law claims are related to plaintiff's federal law claims such that those claims form part of the same case or controversy under Article III of the United States Constitution.

3. Venue is proper in that the claims alleged herein arose within the City of San Diego, San Diego County, California.

## III.
## PARTIES

4. Plaintiff Stuart Fagan resides in the City of San Diego, San Diego County, California.

5. Defendant Reebok International, Ltd. (hereinafter, "Reebok") is a Massachusetts Corporation with a principal place of business in Canton, Massachusetts. Adidas AG, a Herzogenaurach, Germany headquartered sports apparel manufacturer and parent company of the Adidas Group, owns Reebok International Ltd.

6. Defendant J.C. Penney Corporation, Inc. (hereinafter, "J.C. Penney"), is a Delaware Corporation with its principal place of business in Plano, Texas.

## IV.

## **FACTS**

7.     On or about August 8, 2010, plaintiff Stuart Fagan purchased a pair of Reebok shoes from J.C. Penny in Escondido, California.  The following day, August 9, 2010, he discovered that J.C. Penny had inadvertently placed two left shoes into the shoe box.  As such, he had his wife return the shoes to J.C. Penny shortly thereafter.  However, when his wife returned to J.C. Penny, it did not have the proper shoe size in stock, as such, it had to order another pair of Reebok shoes from its warehouse.  On or after August 17, 2010, plaintiff was notified that his shoes were available for pick-up in the store.  Shortly thereafter, plaintiff's wife picked up the Reebok shoes from J.C. Penny.

8.     On or about September 1, 2010, Mr. Fagan began regularly using the Reebok shoes to walk around his neighborhood in the evenings with his children.

9.     Within approximately two weeks' time, Mr. Fagan began experiencing severe pain in his feet, so on September 16, 2010, he scheduled an appointment with his medical care provider, Kaiser Permanente, to learn the cause of his pain.  He was seen on September 16, 2010, by Douglas A. Drake, P.A.  During his visit, P.A. Drake diagnosed Mr. Fagan with plantar fasciitas and referred him to a Kaiser Permanente podiatrist, Jeffrey Korn, DPM.

10.     On or about October 7, 2010, Mr. Fagan was seen by Dr. Korn.  During the visit, Dr. Korn diagnosed Mr. Fagan with plantar fasciitas, strained feet, and pes cavus.  Dr. Korn gave Mr. Fagan recommendations to follow to care for his injuries, and Mr. Fagan followed them.  Dr. Korn further ordered Mr. Fagan to return to his offices for another visit in two months.

11.     In or around November 1, 2010, Mr. Fagan was treated once by an acupuncturist, but being fearful of needles, and having felt no relief from his pain, Mr. Fagan did not

return to the acupuncturist.  Mr. Fagan paid approximately $105 for the visit.

12. On or about November 22, 2010, Mr. Fagan again was seen by Dr. Korn.  After further evaluation, Dr. Korn supplemented his original diagnoses of Mr. Fagan to further find that he had suffered tarsal tunnel syndrome and neuritis.  During the visit, Mr. Fagan brought one of his Reebok tennis shoes to Dr. Korn, and asked him if there appeared to be anything wrong with the shoe.  Immediately, Dr. Korn opined that the shoe was defective and it was the cause of Mr. Fagan's injuries.  During the visit, Dr. Korn injected one of Mr. Fagan's feet with cortisone.  Mr. Fagan had driven alone to the visit, so Dr. Korn could not inject both of his feet at that time.  Be that as it may, Dr. Korn instructed Mr. Fagan to call him back if the cortisone injection provided him with relief.  Dr. Korn further gave Mr. Fagan instructions on caring for his feet, which Mr. Fagan followed.  Dr. Korn ordered Mr. Fagan to return to his offices for another visit in two months.

13. In or around January 2011, Mr. Fagan began seeing Dr. Monica A. Kieffer, DO, for additional treatment.  Mr. Fagan saw Dr. Kieffer for several months of treatment.

14. On or about February 15, 2011, Mr. Fagan again was seen by Dr. Korn.  After further evaluation, Dr. Korn again supplemented his original diagnoses of Mr. Fagan to note that Mr. Fagan had suffered spinal stenosis and neuropathy, peripheral.  As a result, Dr. Korn ordered spinal x-rays for Mr. Fagan that same day, and he again injected Mr. Fagan with another cortisone shot.  Thereafter, Dr. Korn referred Mr. Fagan for an MRI and to the Neurology department at Kaiser.  Dr. Korn also ordered Mr. Fagan to return to his offices for another visit in one month.  Thereafter, an MRI was conducted on Mr. Fagan.

15. On or about March 23, 2011, Mr. Fagan again was seen by Dr. Korn.  During the visit, Dr. Korn again injected Mr. Fagan with cortisone.  Dr. Korn ordered Mr. Fagan to return to his offices for another visit in two months.

4

16. On or about March 30, 2011, Mr. Fagan was seen at Kaiser Permanente by Dr. Timothy Paul Armstrong, M.D., in the Neurology department. After examining Mr. Fagan, Dr. Armstrong concluded that he was suffering from Tarsal Tunnel Syndrome. What is more, Dr. Armstrong opined that is was caused by the Reebok shoes that Mr. Fagan had worn.

17. On or about April 7, 2011, at Dr. Korn's recommendation, Mr. Fagan was seen by an orthopedic surgeon, Daniel Sunboliyan, DPM, at Kaiser Permanente, to discuss the possibility of surgery on Mr. Fagan's feet. During the visit, Dr. Sunboliyan explained to Mr. Fagan that surgery would likely make his feet worse. As such, Mr. Fagan opted not to have surgery done on his feet. After meeting with Mr. Fagan, Dr. Sunboliyan ordered Mr. Fagan to return to his offices for another visit in one month.

18. On or about May 4, 2011, Mr. Fagan again was seen by Dr. Sunboliyan. During the visit, Dr. Sunboliyan diagnosed Mr. Fagan with pes cavus, sinus tarsi syndrome, metatarsalgia, and tightness of gastrocnemius. Dr. Sunboliyan gave Mr. Fagan some exercises to perform, and ordered Mr. Fagan to return to his offices for another visit in about six weeks. After seeing Dr. Sunboliyan, Mr. Fagan followed the exercise routine that he was given.

19. On or about July 11, 2011, Mr. Fagan again was seen by Dr. Sunboliyan. Dr. Sunboliyan ordered Mr. Fagan to return to his offices for another visit in about six weeks.

20. On or about August 16, 2011, Mr. Fagan again was seen by Dr. Sunboliyan. During the visit, Dr. Sunboliyan informed Mr. Fagan that there was nothing further that he could do for him. As such, Mr. Fagan stopped seeing Dr. Sunboliyan.

21. In or around January 2012, Mr. Fagan began treating with the Egosque Center in Del Mar, California. Mr. Fagan treated regularly with the Egosque Center for several months, and

continues to regularly perform the physical exercises prescribed to him by his physical therapist.

## V.

## FIRST CLAIM

**(Strict Liability in Tort As Against all Defendants)**

22.  Plaintiff realleges and incorporates by reference each paragraph previously alleged in this complaint.

23.  Defendants Reebok and J.C. Penney, and each of them, intended that the Reebok shoes manufactured, designed, distributed, and sold by them were to be used by the general public for wear.

24.  The Reebok shoes were, at the time plaintiff purchased them as herein alleged, defective and unsafe for their intended purpose in that they were defectively manufactured, and/or designed such that when they were worn they caused injuries and damages to plaintiff.

25.  During the course of plaintiff's use, and as a proximate result of the defect herein above described, plaintiff's feet were damaged.

26.  As a proximate result of the alleged defect, plaintiff was injured in his health, strength, activity, sustaining injury to his body, all of which injuries have caused and continue to cause plaintiff great physical pain and suffering.  These injuries may have resulted in some permanent disability to plaintiff, all to his general damage in a sum to be proven at trial.

27.  As a further proximate result of the defect, plaintiff has incurred and will continue to incur, medical and related expenses reasonably required in the treatment and relief of the

injuries alleged in this complaint in a sum to be proven at trial.

28. By reason of the defect, plaintiff will in the future be prevented from attending to his usual occupation for an undetermined period of time, all to his damage in a sum unknown to him at this time.

29. Plaintiff is informed and believes and thereon alleges that defendants, and each of them, knew that the Reebok shoes manufactured, designed, distributed, and sold by them were defective and dangerous in the manner alleged herein; that defendants knew that because of the defect(s), the Reebok shoes could not safely be used for th purpose(s) for which they were intended; that defendants' knowing that the subject Reebok shoes were defective and dangerous, in conscious disregard of the safety of the public placed it on the market (without warning customers or the unknowing public of the defect), and knowing when they did so that the Reebok shoes would be sold to and used by the general public without inspection for the defects; that defendants, by placing the defective Reebok shoes on the market, impliedly represented that they were safe for the purpose for which they were intended; and that defendants, by placing them on the market and otherwise representing them as able to perform safely, intended that customers and unknowing public should rely on their representations. Plaintiff, in purchasing and using the defective Reebok shoes as herein alleged, did rely on defendants' representations, all to his damage as herein above alleged.

## SECOND CLAIM
**(Breach of Implied Warranty As Against all Defendants)**

30. Plaintiff realleges and incorporates by reference each paragraph previously alleged in this complaint.

31.     Defendants, and each of them, through their agents and employees, impliedly warranted and represented that the subject Reebok shoes were free from defects and in all respects safe for use in the manner for which they were designed, manufactured, distributed, and sol, and warranted that the subject Reebok shoes were fit for the purpose intended, namely shoes for wearing by the general public.

32.     Plaintiff relied on these warranties and representations of defendants, and each of them, and defendants' skill and judgment in manufacturing, designing, distributing, and selling the subject Reebok shoes.

33.     Defendants, and each of them, breached such warranty, in theat, the subject Reebok shoes were in fact unmerchantable and unfit to be used as intended, in that certain component parts thereof, were defectively manufactured and designed and as a proximate result thereof, the subject Reebok shoes were, in fact, unfit for use and were of unmerchantable quality.

34.     On or about November 22, 2010, plaintiff discovered that the subject Reebok shoes were defective and not safe for reasonable wear.

35.     As a proximate result of such breach of warranty by defendants, and each of them, plaintiff has been damaged as aforementioned and in an amount to be proven at trial.

36.     Plaintiff has incurred costs of suit and reasonable attorney's fees in bringing this action and is entitled to recover said attorney's fees and costs pursuant to Civil Code Section 1794.

## THIRD CLAIM

**(Breach of Implied Warranty of Fitness As Against all Defendants)**

37. Plaintiff realleges and incorporates by reference each paragraph previously alleged in this complaint.

38. On or about August 8, 2010, plaintiff purchased the subject Reebok shoes from defendants, and each of them. Plaintiff relied on defendants', and each of them, skill and judgment to select or furnish suitable shoes for such purposes.

39. At the time of the purchase of the subject Reebok shoes, defendants, and each of them, had reason to know the particular purposes for which the goods were required by virtue of the fact that plaintiff expressly communicated such purpose to defendants, and that plaintiff was relying on defendants, and each them, skill or judgment to select or furnish suitable goods; so that there was an implied warranty that the goods were fit for such purpose.

40. However, defendants, and each of them, breached such warranty implied at the time of the sale, in that, such goods were not fit for the particular purposes for which they were required, in that, the Reebok shoes caused plaintiff's body injuries and damages hereinafter alleged.

## FOURTH CLAIM

**(Negligence As Against all Defendants)**

41. Plaintiff realleges and incorporates by reference each paragraph previously alleged in this complaint.

42. Defendants designed, manufactured, tested, assembled, distributed, marketed, and sold a certain Reebok shoe.

43. Defendants owed a duty of care to the general public, and plaintiff in particular, to design, manufacture, test, assemble, distribute, market, and sell products, and in particular the Reebok shoes, which were reasonably safe for wear by the general public, and plaintiff in particular, for the purposes for which they were intended.

44. Defendants carelessly and negligently breached and violated the aforementioned duties by failing to adhere to the accepted standards of safety, law and regulations, guidelines, good engineering practices, and/or the appropriate state of the art, including but not limited to:

    A.    Failing to design, manufacture, and distribute a product which was in compliance with the prevailing industry standards;

    B.    Failing to design, manufacture, assemble, and distribute the subject product in a form fit for its intended purpose;

    C.    Negligently failing to implement proper testing and/or inspection procedures which would detect the inherent dangers of this product;

    D.    Negligently failing to implement proper testing and/or inspection procedures which would detect a manufacturer's defect of this product;

    E.    Other acts of negligence yet to be determined.

45. The defect in the Reebok shoes purchased by plaintiff was due to the negligence of defendants.

46. As a direct and proximate result of defendants' negligent conduct, plaintiff has suffered, continues to suffer, and will suffer in the future from severe injuries, some of which may be permanent in nature, including, but not limited to: extreme foot pain and discomfort, numbness, and

disability, all to plaintiff's general damage in an amount in excess of the jurisdictional minimum of this court according to proof.

47. Prior to the time of this accident, plaintiff was a reasonably healthy individual, but as a direct and proximate result of defendants' negligence, plaintiff has become sore, injured, and disabled.

48. As a further proximate result of defendants' negligence, and each of them, plaintiff was required to and did and continues to incur medical and incidental expenses. The exact amount of such expenses is unknown to plaintiff at this time, and plaintiff will ask leave to amend this pleading to set forth the exact amount thereof when the same is ascertained.

## FIFTH CLAIM

**(Product Liability as Against all Defendants)**

49. Plaintiff realleges and incorporates by reference each paragraph previously alleged in this complaint.

50. Plaintiff purchased a pair of Reebok shoes that were either defectively designed and/or manufactured. As a legal cause of the defective design and/or manufacture of the shoes, plaintiff suffered injury.

## VII.

## **PRAYER FOR RELIEF**

WHEREFORE, plaintiff Stuart Fagan prays for entry of judgment against defendants that:

1. Awards compensatory and special damages in a sum in excess of $75,000;
2. Awards all medical and related expenses according to proof;
3. Awards all loss of earnings and future earnings capacity according to proof;
4. Awards pre-judgment interest and post-judgment interest as provided for by law;
5. Awards costs of suit herein incurred, including reasonable attorneys' fees; and
6. Awards all such other and further relief as the court may deem proper.

Dated: September 13, 2012

By: /s/ Stuart E. Fagan
Stuart E. Fagan
Plaintiff In Pro Per

## VIII.

## JURY DEMAND

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, plaintiff Stuart Fagan hereby requests a trial by jury.

Dated: September 13, 2012

By: /s/ Stuart E. Fagan
    Stuart E. Fagan
    Plaintiff In Pro Per